UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Melissa Danielle Martinez,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 1:26-cv-1606-GSA

**OPINION & ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Docs. 13, 15)**

## I. Introduction

Plaintiff Melissa Danielle Martinez seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is before the Court based on the parties' briefs. After reviewing the record, the undersigned finds that substantial evidence and applicable law do support the ALJ's decision.

## II. Factual and Procedural Background

Plaintiff filed SSDI application on February 24, 2021, and the SSI application on March 23, 2021. In both claims the claimant alleged a disability onset date of March 28, 2019. These claims were denied initially on October 28, 2021, and upon reconsideration on March 30, 2022. The ALJ held a hearing on February 13, 2023. The claimant objected to the vocational expert testimony pointing out that it conflicted with the DOT and was not resolved, thus a second hearing was held on August 21, 2023 via an online video hearing to address the issues with prior vocational expert testimony.

On September 11, 2023, the ALJ issued an unfavorable decision. After the Appeals Council denied review on April 3, 2024, the claimant filed an appeal with the United States District Court for the Eastern District of California which issued an order for an agreed remand

on October 31, 2024. The Appeals Council then issued a remand order and a new hearing was held on November 18, 2025. The ALJ issued another unfavorable decision on December 19, 2025 and the Appeals Council denied review. Plaintiff then filed a new complaint in this Court on February 25, 2026.

## III. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.

"This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. See Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

"This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a

whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

**IV. Evaluating a Claimant's Alleged Disability**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

Again, errors in Social Security disability determinations are subject to harmless error analysis. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014); Ludwig

v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). "An error is harmless if it is 'inconsequential to the ultimate nondisability determination' . . . or 'if the agency's path may be reasonably discerned,' even if the agency 'explains its decision with less than ideal clarity[.]" Treichler, 775 F.3d at 1099 (citation omitted).

**V. The ALJ's Decision**

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 28, 2019. At step two, the ALJ determined that Plaintiff had severe impairments of: 1-degenerative disc disease of the cervical spine, 2-migraines, 3-right shoulder degenerative joint disease, and 4- status post arthroscopic surgery of the left knee. AR 1098. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). AR 1102.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity and concluded that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except the claimant: can frequently push and pull with the right, dominant, upper extremity; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently kneel, crouch, and crawl; occasionally reach overhead; and, can tolerate no exposure to extreme cold, unprotected heights, or dangerous moving machinery. AR 1103.

At step four, the ALJ concluded that "The claimant is capable of performing past relevant work as a salesclerk." AR 1107. At step five, in reliance on the VE's testimony, the ALJ made an alternative finding that Plaintiff could perform other jobs existing in significant numbers in the national economy, namely: Cashier II; Fast Food Worker; Cleaner, Housekeeping. AR 1109. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since the

alleged onset date of March 28, 2019. AR 1109.

**VI. Issues Presented**

Plaintiff sets forth two claims of error: **1**- "the ALJ's analysis of the medical opinions are not supported by substantial evidence and contain legal error ." MSJ at 4, ECF No. 13. (Hereinafter Claim 1). **2**- "the ALJ failed to provide clear and convincing reasons to reject the subjective limitations of Melissa Martinez." MSJ at 16. (Hereinafter Claim II).

**A. Claim I**

**1. Relevant Law**

**a. RFC Generally**

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity (RFC). *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making

findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

**b. Medical Opinions**

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Instead, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization and other factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and the agency will articulate how the factors of supportability and consistency are considered. Id. (emphasis added). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." Woods v. Kijakazi, 2022 WL 1195334, (9th Cir. Apr. 22, 2022) at *6.

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Regarding "consistency," the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

To provide substantial evidence of supportability or consistency finding, an ALJ need

only provide "more than a mere scintilla but less than a preponderance" of the evidence. *Tackett*, 180 F.3d at 1098. Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791-92 (quoting 20 C.F.R. § 416.920c(c)(1)). Consistency "means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* at 792 (quoting 20 C.F.R. § 416.920c(c)(2)).

In addition, neither supportability nor consistency is controlling; they are considered in relation to each other and to any other factors an ALJ finds relevant. 20 C.F.R. § 404.1520c(b)(2).

While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 791.

Of important relevance to this case, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings. Id.at 792.

In the end, supportability merely asks whether the results of a specific medical provider's examination support that medical provider's opinion, whereas consistency is evidence from other medical sources. See, Thomas M. v SSA Comm'r, 2026 US Dist. Lexis 216811.

**2. <u>Analysis</u>**

**a. <u>Supportability</u>**

Plaintiff contends the ALJ erred in rejecting the opinions of treating clinicians PA Wharton and Dr. Sanchez. MSJ at 5. The ALJ explained her rejection as follows:

> Multiple physical assessments were performed by Wendell Wharton, Jr., PA, and Irene Sanchez, M.D., from April of 2019 through April of 2020 in connection with her worker's compensation claim (Ex. 2F at 6-32). PA Wharton and Dr. Sanchez performed physical exams and reviewed imaging studies as part of the assessments (Ex. 2F at 6-32). PA Wharton and Dr. Sanchez stated the claimant could return to modified work <u>with limited use of the right arm, no overhead work</u>, no climbing of ladders, no pushing, pulling, <u>or lifting over 5-10 pounds</u>, no working at heights (Ex. 2F at 6, 10, 13, 16, 19, 22, 25, 28, 31, 34).
>
> I find the assessments provided by PA Wharton and Dr. Sanchez to not qualify as medical opinions under Social Security regulations (20 CFR 404.1513(a)(2), 416.913(a)(2)). In order to be considered a medical opinion a statement must be provided by a medical source about what the claimant can still do despite her impairments (20 CFR 404.1513(a)(2), 416.913(a)(2)). The statements provided by PA Wharton and Dr. Sanchez do not include such assessment as they detail what the claimant cannot do and therefore, they do not qualify as medical opinions; however, they will still be considered as part of the longitudinal record.
>
> Even if I was to consider the assessments provided by PA Wharton and Dr. Sanchez to be opinions, they would not be persuasive. The limitations noted became more restrictive over time, with the claimant reduced to pushing, pulling, or lifting no more than 5 pounds and adding restrictions against working around heights and climbing ladders; however, the observed capabilities for the claimant remained steady or improved (Ex. 2F at 6, 10, 13, 16, 19, 22, 25, 28, 31, 34). As such, the assessed limitations were not supported by the observed limitations in the assessments. Additionally, the limitations assessed were temporary in nature and are not consistent with the longitudinal record which shows the claimant to be more functionally capable (Ex. 4F at 6; Ex. 21F at 8; Ex. 22F at 22, 27; Ex. 23F at 67; Ex. 24F at 16).

AR 1106. (emphasis added)

Plaintiff begins by asserting: "The ALJ erred in finding that the opinions were not medical opinions because the doctors opined that Martinez cannot lift over 10 pounds instead of using magic words such as "the most she can lift is 10 pounds." Here, even if Plaintiff's point is correct, which the Court need not take a position, the alleged error does not undermine the ALJ's overall reasoning.

Plaintiff then critiques the ALJ's reasoning as follows:

> The ALJ's "[e]ven if'[1] supportability and consistency analysis consists of the ALJ's determination that PA Wharton and Dr. Sanchez' physical assessments

[1] I.e. the portion of the ALJ's above quoted discussion that follows "Even if I was to consider the assessments provided by PA Wharton and Dr. Sanchez to be opinions, they would not be persuasive."

became more restrictive when the treatment notes she cites allegedly demonstrated Martinez' capabilities "remained steady" or "improved." AR 1106. The ALJ does not perform any comparison or analysis with the evidence (show her work) but simply cites to some isolated portions of the medical records from this time. AR 1102. However, a review of the medical records belies the ALJ's conclusion that there was either no change and/or improvements. For example, at the first examination on March 18, 2019, Martinez' right shoulder symptoms and findings were documented as follows:

Pain was reported at 5/10; Tenderness to palpation over the acromioclavicular joint and over the anterior glenohumeral joint. Forward Flexion (NL 180") painful abnormal 150" Extension (NL 40s): painful Abnormal 30" Abduction (NL 180) painful Abnormal, 95" Adduction (NL 60 *); painful Abnormal 30* Internal Rotation (NL 90 9) painful 90* External Rotation (NL 90 P) painful 90." MSJ at 8–9.

Plaintiff continues:

A review of the records from PA Wharton and Dr. Sanchez more than one year later on March 31, 2020, reveal findings as follows: Palpation: moderate tenderness acromion, acromioclavicular Joint Forward Flexion (NL180 °): 180* Extension (NL 40*): 30* Abduction (NL 180 °): 170* Adduction (NL 50 *): 40* Internal Rotation (NL 90 °): 50* Crepitation w/circumduction; No, However, there is a popping reproducible with rotational movements of her shoulder Abduction against resistance: 3+ over 5 Impingement signs: negative Motor testing: decreased strength

Plaintiff then asserts:

The ALJ's supportability analysis is thus deficient, because she does not articulate how the records do not support the doctors' opinions that Martinez could not lift over 10 pounds. The fact that the doctors assessed even greater limitations to no lifting over 5 pounds as treatment progressed appears based on the fact that they observed variable symptoms over time and a significant pain increase from 5/10 to 9/10. AR 500-509. MSJ at 11

However, an ALJ needn't "show her work" or articulate the comparison as the numbers speak for themselves, and as Defendant points out,

as the ALJ explained, these providers' physical examinations in early 2019 showed right shoulder flexion limited to 150 degrees with pain and abduction limited to 95 degrees with pain, but by early 2020, physical exams showed improved shoulder range of motion, with full flexion to 180 degrees and almost full abduction to 170 degrees with no pain, which do not suggest a total inability to reach overhead. AR 1106 (citing AR 477, 508). Moreover, these care providers' exams showed right shoulder abduction strength capable of resistance

> against gravity with no left arm abnormalities, which does not support a limitation to pushing, pulling, or lifting only five to 10 pounds because the unaffected left arm alone could push, pull, and lift this minimal weight. AR 493, 496, 499

Resp at 6 &7

Plaintiff argument continues with:

> Thus, for example, some portions of the exam showed improvement (forward flexion on March 18, 2019 was only 150 while on March 31, 2020 it was 180), while other portions demonstrated an increase in symptoms in 2020 (internal rotation normal on March 18, 2019, while in March 2020 it was only 50; motor testing originally described as reduced in March 2019 later described as 3+/5). Compare AR 477 with 508-509. While the new regulations ended the treating physician rule, they did not upend the Ninth Circuit's entire body of caselaw relating to medical evidence, which remain binding. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. (collecting cases).

However, Plaintiff's argument does not adequately address the significant improvement in shoulder abduction as cited above, i.e., from 95 degrees with pain to painless abduction at 170 degrees. Further, shoulder flexion, the movement of raising your arm straight forward and upward, would seemingly be of significant importance when considering one's ability to reach overhead.

The record also notes abduction strength against gravity with a normal left arm. Specifically, considering the significant range of motion improvements in the right arm together with an unaffected left arm, the alleged limitation to lifting 5 to 10 pounds is unsupported. That is particularly true given the asymptomatic left arm could meet the modest exertional demands on its own. AR 493, 496, 499.

**b. <u>Consistency</u>**

In terms of consistency, P.A. Wharton and Dr. Sanchez opined that Plaintiff could never push, pull, or lift over five to 10 pounds. AR 478-506. Yet physical exams showed full UE strength. AR 547, 1390, 1439–41. The ALJ appropriately concluded these opinions were not

consistent with this aspect of the record. AR 1106.

Plaintiff argues:

> Second, the whole point of the consistency analysis is for the ALJ to evaluate whether this opinion was consistent with other opinions and evidence in the record. The records dated after PA Wharton and Dr. Sanchez, including the records from PA Everett and the multitude of treatment records provided by PA Everett and pain management, including an updated cervical MRI from 2023, are consistent with the limitations assessed PA Wharton and Dr. Sanchez. AR 1851. The recent cervical MRI dated July 10, 2023, not reviewed by the state agency doctors, showed degenerative changes of the cervical spine associated significant foraminal stenosis at C6-C7. AR 1386-1414. This MRI showed significant worsening of the foraminal stenosis since the prior MRI with a 3mm disc osteophyte complex which extends into foramina. Moderate to severe stenosis of the left neural foramen and moderate stenosis of the right neural foramen. AR 1412 and 1818. The previous cervical MRI dated February 26, 2021, was mentioned by the first state agency physicians Leonard Naiman, M.D., on August 17, 2021 and Dr. Tayloe in August and October 2021. AR 104 and 116-117. The doctors summations of the previous MRI were "02/26/21 C/S MRI showed posterior bulging C3-7 w/ no spinal canal stenosis." AR 104. Drs. Naiman and Tayloe included neck limitations in their RFC assessment of no extreme neck flexion or extension. AR 113 and 116. The Appeals Council specifically directed the ALJ to considered the neck limitations assessed by Dr. Tayloe in their April 2025 remand order noting the opinion conflicted with the ALJ's RFC assessment in that the ALJ neither adopted these limitations nor explained why they were not adopted. AR 1151. The Appeals Council also noted that Dr. Tayloe assessed a limitation to frequent reaching at or below shoulder level. (Emphasis added) AR 1151. The ALJ misidentified this limitation in the decision stating that Dr. Tayloe only limited frequent overhead reaching. AR 1106. MSJ at 12.

However, the ALJ appropriately rejected P.A. Everett's opinions as inconsistent with objective medical evidence. AR 1106. Based on two exams, P.A. Everett indicated a lift/carry threshold of 10 pounds occasionally, with several unscheduled breaks, less than 1 hour sitting, standing, and walking, her head could not be held stationary, and would have more than 4 unexcused absences per month. AR 674–75, 1849–51. The ALJ explained the rejection P.A. Everett's opinions because " Neither opinion is supported with reference to objective medical evidence, instead referring to various diagnoses or reporting of symptoms from the claimant (Ex. 6F at 2-3; Ex. 30F at 2). PA Everett also noted side effects of the claimant's medications would affect her ability to work; however, the claimant has repeatedly denied experiencing any side

effects from her medication throughout 2024 (Ex. 21F at 10, 15, 18, 23; Ex. 30F at 4). Additionally, PA Everett's opinion is not consistent with the longitudinal record which shows the claimant is more physically capable as despite her impairments she still retains full strength and full range of motion in her upper extremities, which was documented by PA Everett in January of 2024 (Ex. 21F at 8)." AR 1106.

Further, although P.A. Everett noted painful ROM of the neck and right shoulder, this has little to do with extreme limitations in sitting, standing, walking, and excessive breaks and absenteeism. AR 1849.

Finally, the ALJ also discounted Dr. Everett's opinion, such as right arm reaching 10 to 20 percent of the workday, and extensive manipulative limitations, as inconsistent with other evidence in the record, AR 1106, AR 674–75, 1849–51. Specifically, the other evidence in the record indicated full bilateral upper extremity (UE) strength, with right arm range of motion (ROM) of full flexion and nearly full abduction. AR 1106. And, treatment notes dated January 2024 noted full strength of both shoulders with full ROM. AR 1106 (citing 1387).

Lastly, unexcused absences due to migraines was belied by records noting the migraines had abated to 1 per month with treatment. (AR 1105 (citing AR 839, 842, 1441)). Post-knee arthroscopic surgery records note normal ambulation with denied knee pain, which is not consistent with Dr. Everett's extreme standing and walking limitations. AR 674–75, 1589, 1849–51.

**c. <u>In Sum</u>**

The ALJ's discussion of the medical opinions was well grounded in the regulatory factors of both supportability and consistency and supported by substantial evidence.

**B. <u>Claim II</u>**

**1. <u>Applicable Law</u>**

**a. Subjective Complaints**

An ALJ performs a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible. See Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281; SSR 16-3p. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and the ALJ finds that there is no evidence of malingering in the record, the ALJ must then evaluate the intensity, persistence and limiting effects of the claimant's symptoms to determine the extent to which those symptoms limit the individual's ability to perform work-related activities. SSR 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective testimony cannot be rejected on the sole ground that the testimony is not entirely corroborated by the objective medical evidence in the record. Nevertheless, the medical evidence is still a relevant factor in determining the severity of Claimant's pain and its disabling effects. See, *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p.

In addition, other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- any applicable precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any prescribed medication; 5- treatment other than medications that the claimant receives; 6- any other measures the claimant uses to relieve pain or other symptom; and 7- other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

**2. Analysis**

To begin, the ALJ is required to provide clear and convincing reasons, supported by substantial evidence to reject Plaintiff's symptom testimony. The ALJ summarized relevant testimony as follows:

> "The claimant alleged she cannot work due to her migraines, as well as pain and reduced range of motion in her neck (hearing testimony)." AR 1103.

Then, after a thorough factual summary, the ALJ rejected Plaintiff's testimony for the following reason:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
> AR 1104.

Plaintiff draws attention to the ALJ's discussion:

> With respect to the claimant's degenerative disc disease of the cervical spine, an x-ray of the claimant's cervical spine in February of 2021 noted degenerative changes to the mid and lower cervical spine (Ex. 5F at 101). A magnetic resonance imaging (MRI) study taken at the same time noted disc bulging and foraminal stenosis as well (Ex. 5F at 103-104). MRI studies of the claimant's neck in July of 2023 and January of 2024 noted degenerative changes associated with significant foraminal stenosis which was considered to have worsened since the prior imaging from 2021 (Ex. 21F at 7; Ex. 22F at 21; Ex. 23F at 39). The claimant has undergone epidural injection therapy, is under the care of pain management, and has prescribed medication and recommended exercises for treatment (Ex. 22F at 22; Ex. 23F at 67). Physical exams have noted a decreased range of motion in the claimant's neck along with pain in her range of motion (Ex.5F at 10; Ex. 16F at 174; Ex. 23F at 103; Ex. 28F at 12). The claimant has also reported her pain being aggravated by cold weather (Ex. 27F at 5).
> AR 1104.

Plaintiff then contends:

> As already noted, the ALJ does not include any neck limitations in the RFC assessment and does not provide any specific reasons to reject the objective findings of reduced range of motion of the neck. While Martinez does not have to provide objective evidence to support the degree of pain and limitation of her neck, she did provide it. The neck limitations are supported by the state agency physicians and her long-time treating provider. The 2023 MRI corroborates her

> pain symptoms and confirms that her condition deteriorated significantly between the time the state agency evaluated the case and the time of the 2023 MRI. MSJ at 18-19, Doc. 13.

First, despite various references throughout the brief to neck pain, Plaintiff's brief discussion of her second claim does not sufficiently address the actual subjective complaints at issue here such as pain severity, precipitating and aggravating factors, and response to treatment. For instance, as to response to treatment, earlier in Plaintiff's brief she acknowledges the following:

> Martinez had multiple epidural cervical injections with significant improvement after each injection. After each injection Martinez would be nauseous, weak, have headaches for four days and have episodes of diarrhea. AR 1412. Between the steroid injections, Martinez' pain would increase and she would return for another injection. Martinez' pain could drop to zero after an injection only to return to baseline of 5-6/10 within a few months. AR 1126 and 1411-1412 Martinez needed more frequent epidurals but her Medi-Cal only allows once every four months. AR 1128.
> MSJ at 13 (emphasis added).

However, the significance of temporary injection side effects, of unspecified severity, without further explanation by Plaintiff, is not meaningfully relevant from a functional perspective, and Plaintiff does not contend otherwise. Further, Plaintiff acknowledges very significant pain relief. Specifically, she stated that her pain abated to zero for a few months after an injection.

In addition, it is not exactly clear what Plaintiff meant when she says that she "needed more frequent epidurals," especially given that she describes her window of pain relief as "a few months" and indicates Medi-Cal approves epidurals only every four months. It appears from this that Plaintiff's pain relief window and Medi-Cal approvals are roughly on the same timeline. And, even if Plaintiff had a need for slightly more frequent epidurals to remain 100% pain free, that would not support a conclusion that her pain would be work preclusive. It is also instructive here to note that the RFC is not the most one can do while remaining pain free, it is

the "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

Then, in response to Plaintiff's other subjective complaints, Defendant argues:

> Here, Plaintiff testified that she could not lift any weight with her right arm, could lift no more than a gallon of milk using both arms, and needed help lifting over 10 to 15 pounds. AR 80-81, 1129. However, contrary to these allegations of extreme weakness with the right arm, as the ALJ explained, a physical exam in the treatment records showed signs of right rotator cuff impingement and reduced right shoulder range of motion, but also full strength throughout the bilateral shoulder girdle, biceps, and triceps. AR 1104 (citing AR 1387). Indeed, other physical exams in the treatment records repeatedly showed full muscle strength of the arms. AR 469, 547, 551, 557, 586, 704, 721, 841, 1079, 1390, 1419, 1439). The ALJ reasonably discounted Plaintiff's most extreme allegations in part because they were contradicted by objective exam findings showing normal strength of the arms.

Resp. at 4.

Plaintiff disagrees with this argument as follows:

> Thus, Martinez never stated that "she could not lift any weight with her right arm." Martinez actually testified that she could lift ten pounds. Id. The ability to lift ten pounds is not extreme as it allows for sedentary work. Thus, the Defendant's statement that Martinez testified she could never lift ten pounds misstates the record, is post hoc, and is not properly described as "extreme."

Reply at 5–6.

Notwithstanding Plaintiff and Defendant's opposing arguments here, the ALJ adequately accounted for Plaintiff's musculoskeletal impairment as follows:

> I have accommodated for the claimant's musculoskeletal impairments by limiting the claimant to light work; frequently pushing and pulling with the right, dominant, upper extremity; occasionally climbing ramps and stairs, but never climbing ladders, ropes, or scaffolds; frequently kneeling, crouching, and crawling; occasionally reaching overhead; and can tolerate no exposure to extreme cold, unprotected heights, or dangerous moving machinery.

AR 1104.

## VII. <u>In Summation</u>

Finally, it should be noted that, "This court may set aside the Commissioner's denial of

[social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Tackett, 180 F.3d at 1097 (citation omitted).

Importantly, the standard of review "is a highly deferential standard . . . ." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted).

Lastly, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner."

Here, because both the ALJ's reasoning and RFC are adequately supported by substantial evidence, the ALJ's finding of non-disability is free of harmful error.

**VIII. Conclusion and Order**

For the reasons stated above, substantial evidence and applicable law do support the ALJ's conclusion that Plaintiff was not disabled. Accordingly, it is **ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 13 is, **DENIED.**
2. Defendant's Cross Motion, ECF No. 15, is **GRANTED**.
3. The Commissioner's decision is **AFFIRMED.**
4. That the Clerk of Court is directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff.

IT IS SO ORDERED.

Dated: **October 20, 2026**

**/s/ Gary S. Austin**
UNITED STATES MAGISTRATE JUDGE